986 So.2d 85 (2008)
Evon RASBERRY, Plaintiff-Appellee,
v.
Todd M. NISSEN and Kroger Texas, L.P., In Solido, Defendant-Appellant.
No. 43,293-CA.
Court of Appeal of Louisiana, Second Circuit.
May 21, 2008.
*86 Mayer, Smith & Roberts by Steven Eric Soileau, Shreveport, for Appellant.
Rice & Kendig, by J. Marshall Rice, for Appellee.
Before PEATROSS, DREW and LOLLEY, JJ.
DREW, J.
Kroger appeals a judgment awarding damages to Evon Rasberry for injuries she sustained from falling in a Kroger parking lot. Determining that the trial judge was clearly wrong in finding that Rasberry's fall was caused by being hit with a store buggy, we reverse.

FACTS
In the early evening on March 25, 2006, Evon Rasberry parked her car in a handicapped spot in the parking lot of the Mansfield Road Kroger in Shreveport, and went inside the grocery store to shop.[1] After Rasberry, who was 64 years old at the time, completed her purchases, 17-year-old Kroger courtesy clerk Todd Nissen brought her groceries to her car.[2] Rasberry testified that Nissen pulled the buggy toward her car while she had her right hand on the buggy without leaning on it. They went around a car parked in front of her car and then walked along the passenger side of her vehicle toward the back. She told Nissen to put the groceries on her rear passenger side seat, and when he *87 opened the back door, she claimed that he shoved the buggy into her and knocked her backwards onto the surface of the parking lot.
Nissen's version of the incident was markedly different, as he denied pushing the buggy against Rasberry. He asserted that he pushed, not pulled, the buggy from the store while standing behind it. Rasberry walked beside him, complaining about her knees. After Rasberry told him to put the groceries in the car on the rear passenger side, he went around the back of the car. Rasberry went around the front of the car and opened the door for him. She started walking back around the front of the car and, then, as he was putting the groceries in the car, he heard her fall.
Paramedics were called, and Rasberry was transported by ambulance to Willis-Knighton Hospital South. She claimed that she sustained a scratch under her left eye, a bruise on her hand, and injuries to her right knee and right shoulder as a result of the incident.
Suit was filed against Nissen and Kroger Texas, L.P. Nissen was subsequently dismissed as a defendant. The trial court rendered judgment in favor of Rasberry, and awarded her $5,123.52 in special damages and $8,250.00 in general damages. Kroger appealed.

DISCUSSION
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Cole v. Department of Public Safety & Corrections, 2001-2123 (La.9/4/02), 825 So.2d 1134; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). To reverse a fact finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart, supra.
Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Cole, supra; Rosell v. ESCO, 549 So.2d 840 (La. 1989). However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may find manifest error even in a finding purportedly based upon a credibility determination. Cole, supra; Rosell, supra. Unfortunately, that is the situation in this case.
Rasberry testified that she did not trip over a curb, and that the parking curb did not cause her to fall or contribute to her falling. However, her version of events is highly implausible based upon the mechanics of how the accident was alleged to have occurred.
At trial, Rasberry marked the location of the buggy on a photo. It showed the buggy as between the front and back door on the passenger side of her car. She claimed that she was standing to the right of where the buggy was in proximity to the car, and that Nissen was standing in front of the buggy. This would place her behind the buggy's handle, and she asserted that the buggy handle hit her in the area of her upper stomach.
Rasberry apparently believed that Nissen pushed the buggy in order to open the *88 door and to bring the buggy around the door. She testified that when Nissen opened the door, he "shoved the buggy back to come around[.]" She further testified, "[H]e pushed the buggy back in order to get the door wide enough to get the buggy through there to get my groceries in." It is unclear why Nissen would not have moved the buggy to the left of the door before opening it.
Rasberry was confused about which hand Nissen used to open the door. At one point she stated that Nissen opened the back door with his right hand, then she said that she did not know which hand he used. But then she later testified that she thought he had his left hand on the buggy before opening the door because he opened it with his right hand. If Nissen opened the door with his right hand while having his left hand on the buggy, and the buggy was to his right and between him and Rasberry, then either he reached behind his back to open the door, or he crossed his arms to open the door. Neither makes sense.
Nissen testified that Rasberry opened the door, and when she did this, the buggy was alongside the car near the trunk. The buggy remained to his left as he put the groceries in the car, and the open car door was to his right. Therefore, moving left to right, the position of the objects and parties was as follows: buggy, Nissen, open car door, and Rasberry. In such an alignment, it was nearly impossible that Rasberry was struck by the buggy. Nissen was unable to understand how he could have hit Rasberry with the buggy when the car door was between them.
Rasberry claimed that the impact knocked her back. However, her injuries were not consistent with such a fall. Edward Bentrupt, an emergency room nurse at the hospital where Rasberry was treated, volunteered that Rasberry's injuries, particularly to her knee and the contusion to her cheek, were consistent with a forward fall, not a backward stumble. In front of the parking spot was a parking curb. Nissen, who did not see Rasberry, found her on the ground near this curb, and he believed that her feet were facing the curb after the fall. Wayne Barnett, the store's associate manager, was paged after the incident. Barnett found Rasberry lying on the ground near the front of the passenger side of her car, with her feet pointed toward and close to the yellow curb and her head pointed toward the back of the car.
Rasberry related a vastly different version of her accident to several individuals. Nissen testified that after Rasberry fell, he went over to her to render aid, and Rasberry told him that she had fallen over the curb. Rasberry countered that Nissen finished putting the groceries in her car and then returned to the store without saying anything to her. Barnett testified that he heard Rasberry say that she had fallen or tripped on the curb. Rasberry testified that Barnett came outside, but he never said anything to her. Although Nissen no longer works at Kroger, perhaps his and Barnett's testimony can be overlooked because they were employed by defendant at the time of injury. But others who had no interest in the outcome gave testimony adverse to Rasberry.
Shreveport paramedic Joseph Burnett responded to the call that Rasberry had been injured at the parking lot. He recorded in his report that Rasberry told him that she had tripped and fallen over the parking curb.[3] He testified that if Rasberry had said she had fallen because the clerk hit her with a buggy, then he *89 would have written that down. Rasberry claimed that she told a paramedic that she had been knocked down with a buggy. She denied telling Burnett that she tripped and fell over a parking curb.
Bentrupt, the emergency room nurse, testified that when he performed the initial triage assessment, Rasberry told him only that she had fallen in the parking lot, which is what he wrote in the assessment report. The emergency room doctor who treated Rasberry recorded in the report that Rasberry complained of falling in a parking lot. Later, Bentrupt wrote in his notes that Rasberry had stumbled in the parking lot.[4] Bentrupt explained that because of Rasberry's age and high blood pressure, she was repeatedly asked about how or why she fell so as to exclude a stroke as the possible cause of her fall. Bentrupt also stated that if Rasberry had said she had been knocked down by a buggy, that would have been recorded because it would have been something out of the ordinary and it would have led him to look for abdominal or rib injuries consistent with being struck hard enough to knock her down.
Rasberry testified that the male nurse, presumably Bentrupt, at the hospital never asked her what had happened, and she denied telling him that she fell in the parking lot. She stated that she told a woman at the hospital who took her to get an X-ray that she had been knocked down.[5] Rasberry contended that she never told the emergency room doctor that she had been struck by the buggy because he did not ask her any questions.
Based upon our review of this record, we conclude that a reasonable factual basis does not exist in the record to support the trial court's finding that Rasberry's fall was caused by Nissen pushing a buggy against her. That finding was clearly wrong. Accordingly, we reverse the judgment of the trial court.

DECREE
At Rasberry's cost, the judgment is REVERSED.
NOTES
[1] Rasberry had arthritis in the knees prior to the accident, which is why she had a handicapped parking tag. She was also considered disabled at the time because of an upper hernia.
[2] An elderly friend that Rasberry described as senile had remained in the car.
[3] Burnett found Rasberry to be alert and oriented.
[4] Bentrupt allowed that some of the information he recorded may have come from details that the paramedics had given him.
[5] Although her testimony was unclear on this point, Rasberry may have also said this to a female nurse.